**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                            **Chapter 11 Case**
                                                                 **Subchapter V**

**UNITED SAFETY AND ALARMS, INC.,**

                                                                 **Case No. 23-14861-SMG**

        Debtor.

_____/

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY UNITED SAFETY AND ALARMS, INC.**

                                        **VENABLE, LLP**
                                        Paul J. Battista, Esq.
                                        Florida Bar No. 884162
                                        Mariaelena Gayo-Guitian, Esq.
                                        Florida Bar No. 813818
                                        Heather L. Harmon, Esq.
                                        Florida Bar No. 013192
                                        100 SE 2nd Street, 44th Floor
                                        Miami, FL 33131
                                        Telephone: (305) 349-2300
                                        Facsimile: (305) 349-2310

                                        *Counsel for the Debtor*

Dated: January 19, 2024

NOTE: THIS FIRST AMENDED PLAN DOES NOT CONTAIN ANY THIRD PARTY RELEASES

## EXHIBIT INDEX

Exhibit A:     Liquidation Analysis of United Safety and Alarms, Inc.

Exhibit B:     Projections of Disposable Income of United Safety and Alarms, Inc.

Exhibit C:     Monthly Operating Report for December 2023 (to be filed under separate cover upon completion)

### FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION
### PROPOSED BY UNITED SAFETY AND ALARMS, INC.

**UNITED SAFETY AND ALARMS, INC**. (the "Debtor") as debtor-in-possession in the above-captioned case, hereby proposes this *First Amended Chapter 11 Plan of Reorganization* under Bankruptcy Code section 1189 (including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Article I herein) (the "Defined Terms").

### ARTICLE I

### DEFINITIONS AND RULES OF INTERPRETATION

**A.    Definitions**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      *"Actions"* shall mean all actions that a trustee or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

2.      *"Administrative Claim"* shall mean any Claim constituting a cost or expense of administration of the Debtor's Case that has been timely filed before the Administrative Claims Bar Date under sections 365(d)(3), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and of operating the business of the Debtor, (ii) any Post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, and (iii) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

3.      *"Administrative Claim Bar Date"* shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

4.      *"Administrative Claimant"* shall mean the holder of an Administrative Claim.

5.      *"Affiliate"* shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Person was a debtor in a case under the Bankruptcy Code.

6.      *"Allowed Amount"* shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed,

2

contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Rules, or the Court, or (c) the amount of a Claim is fixed by an order of the Court which has become a Final Order, or (d) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim, or Unsecured Claim include interest accrued on such Claim after the Petition Date.

7. **"*Allowed Claim*"** shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

8. **"*Allowed Equity Interest*"** shall mean any Equity Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

9. **"*Asset(s)*"** shall mean any and all property of the Estate as defined under and included in Section 541(a) of the Bankruptcy Code, whether existing on the Petition Date or acquired after the Petition Date, including without limitation, all legal or equitable pre-petition and post- petition interests of the Debtor in any and all real or personal property of any nature, including any and all Cash, real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of action, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

10. **"*Assumed Contract*"** shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the parties) that is assumed by the Debtor pursuant to the Plan.

11. **"*Available Cash*"** means the sum of (i) Cash on hand as of the Effective Date, including, without limitation, Cash in the Debtors' bank accounts.

12. **"*Avoidance Actions*"** means any Cause of Action to avoid or recover a transfer of property or an obligation incurred by the Debtor and any recovery, subordination, or other remedies that may be brought by or on behalf of the Debtor and its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including under sections 502, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code.

13. **"*Ballot*"** shall mean the ballot upon which holders of Claims and Equity Interests

in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

14.     ***"Ballot Deadline"*** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

15.     ***"Bankruptcy Code"*** means Articles 101 et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

16.     ***"Bankruptcy Court"*** or ***"Court"*** means the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division.

17.     ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

18.     ***"Business Day"*** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Broward County, Florida are authorized or required to close.

19.     ***"Case"*** shall mean the chapter 11 bankruptcy case of United Safety and Alarms, Inc., Case No. 23- 14861-SMG, pending in the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division.

20.     ***"Cash"*** shall mean legal tender of the United States of America or its equivalents, including but not limited to bank deposits, checks and other similar items.

21.     ***"Claim"*** shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

22.     ***"Claims Bar Date"*** shall mean <u>August 30, 2023</u> the last date for Creditors—other than a governmental unit—and holders of Equity Interests to file proofs of Claim or Equity Interest(s) in the Case, as set forth in the *Order Setting Subchapter V Status Conference, Claims Bar Date, and Deadline for Elections Under 11 U.S.C. § 1111(b)* [ECF No.20].

23.     ***"Class"*** shall mean a single Claim or Equity Interest, or group of Claims or Equity Interests, classified pursuant to Article V of the Plan and treated pursuant to Article VI of the Plan.

24.     ***"Code"*** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

4

25.    *"Collateral"* shall mean any property or interest in Property of the Debtor, or the Estate of the Debtor, in which the Debtor has an interest subject to a Lien that secures, in whole or in part, payment or performance of an Allowed Amount of a Secured Claim.

26.    *"Confirmation"* shall mean the entry by the Court of the Confirmation Order.

27.    *"Confirmation Date"* shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

28.    *"Confirmation Hearing"* shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

29.    *"Confirmation Order"* shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in a form and substance satisfactory to the Proponent.

30.    *"Court"* shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

31.    *"Creditor(s)"* shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

32.    *"Debtor"* or *"Debtor in Possession"* shall mean United Safety and Alarms, Inc.

33.    *"Disbursing Agent"* shall have the meaning ascribed to it in Section 7.04 of the Plan.

34.    *"Disputed Amount"* shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

35.    *"Disputed Claim"* shall mean any Claim against or Equity Interest in the Debtor, including General Unsecured Claims, Priority Claims and Secured Claims, which has not yet been allowed and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent, or unliquidated. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or order of the Court.

36.    *"Distribution(s)"* shall mean funds to be paid to holders of Allowed Claims or Equity Interests under the terms of the Plan.

37.     **"*Distribution Date*"** shall mean the dates upon which Distributions may be made pursuant to Article VII of the Plan.

38.     **"*Distribution Record Date*"** shall mean the date, as set by an order of the Court, on which the Debtor or Reorganized Debtor, as the case may be, will cease processing transfers of Claims and Equity Interests, and upon which Allowed Claims or Allowed Equity Interests are determined for purposes of voting on, or receiving Distributions under, the Plan.

39.     **"*Docket*"** shall mean the docket maintained in the Case by the Clerk of the Court.

40.     **"*ECF*"** or **"*ECF No.*"** shall refer to the entries on the Docket.

41.     **"*Effective Date*"** shall be described in the Confirmation Order and shall be the date upon which the last of the conditions precedent set forth in Section 11.01 of the Plan occurs.

42.     **"*Entity*"** shall have the meaning set forth in section 101(15) of the Bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the U.S. Trustee.

43.     **"*Equity Interest*"** shall mean any ownership or equity interest in the Debtor, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtor.

44.     **"*Estate*"** shall mean the estate created pursuant to section 541 of the Bankruptcy Code.

45.     **"*Exculpated Parties*"** shall have the meaning ascribed to such term in Section 13.04 of the Plan.

46.     **"*Executory Contract*"** shall mean a contract or unexpired lease to which the Debtor is a party and that is executory within the meaning of section 365 of the Bankruptcy Code.

47.     **"*Face Amount*"** shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) the amount of a Claim is fixed by an order of the Court which has become a Final Order, or (d) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

48.     **"*Fee Request*"** shall mean an application or request for payment by the Estate of fees, compensation for services rendered, or reimbursement of expenses pursuant to Rule 2016 of the Rules or other applicable provision of the Bankruptcy Code or the Rules.

49.    **_"Final" or "Final Order"_** shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

50.    **_"General Unsecured Claim"_** shall have the same meaning as Unsecured Claim.

51.    **_"Governmental Claims Bar Date"_** shall mean <u>December 18, 2023</u>, the last date for a governmental unit to file a proof of Claim in the Case pursuant to Bankruptcy Rule 3002(c)(1).

52.    **_"Impaired"_** shall mean an Allowed Claim or Equity Interest that is Impaired within the meaning of section 1124 of the Code.

53.    **_"Insider(s)"_** shall mean those Persons defined in section 101(31)(B) of the Code.

54.    **_"IRS"_** shall mean the U.S. Internal Revenue Service, an agency of the United States of America.

55.    **_"Late Filed Claim"_** shall mean a Claim filed after the Claims Bar Date or the Governmental Claims Bar Date.

56.    **_"Lien"_** shall mean a charge against or interest, including a security interest (as security interest is defined in the Uniform Commercial Code), in any Property of the Estate to secure payment of a debt and/or monetary obligation or the performance and/or satisfaction of non- monetary obligations.

57.    **_"Objection Deadline"_** shall have the meaning ascribed to it in Article VII of the Plan.

58.    **_"Person"_** shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, Entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

59.    **_"Petition Date"_** shall mean <u>June 21, 2023</u>, the date on which the Debtor commenced the Case by filing a voluntary petition under subchapter V of chapter 11 of the Code.

60.     **"*Plan*"** shall mean this First Amended Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

61.     **"*Plan Documents*"** shall mean the documents to be filed as a part of the Plan Supplement.

62.     **"*Plan Supplement*"** shall mean any document or agreement which may be identified and otherwise filed with the Clerk of the Court in connection with, or support of, the Plan and Confirmation of the Plan and thereafter incorporated by reference in the Confirmation Order.

63.     **"*Post-Petition*"** shall mean subsequent to the Petition Date.

64.     **"*Post-Petition Interest*"** shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

65.     **"*Pre-Petition*"** shall mean prior to the Petition Date.

66.     **"*Priority Claim(s)*"** shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507(a)(3)-(7) of the Code.

67.     **"*Priority Tax Claim*"** shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

68.     **"*Pro Rata*"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed General Unsecured Claim or Disputed Equity Interest has not been finally resolved as of the Effective Date, an appropriate reserve for payment of such Disputed General Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient Cash available to make a Pro Rata Distribution to the holder of such Disputed General Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute, which reserve shall be in the amount of the Pro Rata Distribution the holder of such Disputed General Unsecured Claim or Disputed Equity Interest would have been entitled to receive under the Plan.

69.     **"*Professional(s)*"** shall mean any professional employed in this Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

70.    **"*Property of the Estate*"** shall mean the property defined in section 541 of the Code.

71.    **"*Proponent*"** shall mean the Debtor.

72.    **"*Rejected Contract*"** shall mean an Executory Contract that is rejected at any time during the Case or pursuant to Article VII of the Plan.

73.    **"*Rejection Claim*"** shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

74.    **"*Rejection Claim Bar Date*"** is defined in section 8.02 of the Plan.

76.    "**Reorganized Debtor*"** shall mean United Safety and Alarms, Inc., as reorganized as of the Effective Date.

77.    **"*Rule(s)*"** shall mean the Federal Rules of Bankruptcy Procedure.

78.    **"*Schedules*"** shall mean the Schedules of assets and liabilities filed by the Debtor with the Court, as the same may be amended from time to time.

80.    **"*Section*"** shall mean a numbered subsection of any Article of the Plan.

81.    **"*Secured Claim*"** shall mean a Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a Lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under section 553 of the Bankruptcy Code, limited in each of case (a) or (b) to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in section 1111(b)(2) of the Bankruptcy Code.

82.    **"*Secured Creditor*"** shall mean the holder of a Secured Claim.

83.    **"*Subchapter V Trustee*"** shall mean, Soneet Kapila, the trustee appointed by the U.S. Trustee pursuant to section 1183(a) of the Code to carry out the duties described in section 1183(b) of the Code.

84.    **"*Substantial Consummation*"** shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1193(b) of the Code, as described in Section 13.19 of the Plan.

85.    **"*Unimpaired*"** shall mean an Allowed Claim or Allowed Equity Interest that is not Impaired within the meaning of section 1124 of the Code.

86.    "**United States*"** shall mean the United States of America.

9

87.    **"*Unsecured Claim*"** shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

88.    **"*Unsecured Creditor*"** shall mean the holder of an Unsecured Claim.

89.    **"*U.S. Trustee*"** shall mean Martin P. Ochs, Trial Attorney, Region 21.

### B.    Rules of Construction and Interpretation

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a)    The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."

(b)    Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c)    All article, section, and exhibit or appendix captions are used for convenience and reference only, and in no way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

### C.    Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtor's counsel by a written request sent to the following address:

**VENABLE, LLP.**
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: 305-349-2300
ATTN: Heather L. Harmon, Esq**.** hlharmon@venable.com

### D.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

E.      **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

# ARTICLE II

## BACKGROUND OF DEBTOR, COMMENCEMENT OF CHAPTER 11 CASE, AND RESTRUCTURING OF DEBTOR'S OBLIGATIONS

### 2.01.    The Debtor and its Assets

The Debtor is a Florida corporation incorporated on May 9, 2019. The corporate headquarters is located at 5555 N. Nob Hill Road, Suite 200, Sunrise, Florida 33351. The Debtor leases the office space from 5555 Nobhill Road, LLC, a Florida limited liability company owned by Sherine Assal, sister of Sherif Assal, the Debtor's principal (the "Office Lease").

The Debtor was founded by Sherif Assal ("Mr. Assal"). Mr. Assal is the Debtor's sole shareholder and Director.  Mr. Assal does not receive any salary or benefits from the Debtor.

After the Effective Date, Mr. Assal will continue to serve as the Debtor's chief executive officer, and will not receive an annual salary from the Debtor.

The Debtor is a leader in security and surveillance with its principal place of business in Broward County, Florida. The Debtor's customers include airlines, city parks, cruise ships and diverse commercial and governmental entities throughout Florida. The Debtor employs a highly trained and professional team to provide peace of mind to private residential customers and communities in South Florida with monitored burglar alarm, fire alarm and access control systems.

The Debtor's primary asset is a portfolio of alarm monitoring contracts, its related cash flow and monitoring fee receivables paid by third party security companies that own noncustomer security services contracts. (collectively, the "Portfolio"). Cash flow from the Portfolio is a "Recurring Monthly Revenues" asset.  As of the Petition Date, the net book value of the Portfolio was $1,085,604.  The Debtor cannot estimate the current market value of the Portfolio.

As of the Petition Date, the Debtor had accounts receivable with a net book value of $187,028.75.  The Debtor continues to collect its accounts receivable in the ordinary course of the business. As of July 31, 2023, as stated in its July 2023 Monthly Operating Report [ECF No. 63], the net book value of the Debtor's accounts receivable was $99,049.55 of which $71,576.73 are receivables under 30 days.

11

Every month, the Debtor makes lease payments for vehicles (primarily work vans) to CarMax, Chase Financial and GM Financial.  The vehicle leases are under the name of an Insider of the Debtor for the Debtor's exclusive use.

The Debtor holds security and installation equipment at its headquarters with a net book value of $113,090.45 as of May 31, 2023 (the "Inventory").  The Debtor cannot estimate the current market value of the Inventory, but is preparing an updated schedule of the Inventory to liquidate the Class 2 Secured Tax Claim of Broward County.

### 2.02.  State Court Litigation

On, November 19, 2019, Alarm Funding Associates, LLC ("Alarm Funding") filed suit in the 17th Judicial Circuit in and for Broward County, Florida ("State Court Litigation") against Defendants Benham Security, Inc., Benham Safety, Inc., Benham Safety Inc., Bright Line, Inc., Electronic Security Systems Inc., Secur Technologies, Inc. (collectively "Benham Parties"), United Safety and Alarms, Inc., Kenneth P. Rush ("Rush"), Sherif Assal ("Assal"), and Vilma Vedda ("Vedda").  Prior to the Petition Date, the State Court Litigation was set for trial starting September 5, 2023.

On June 22, 2023, the Debtor filed a Suggestion of Bankruptcy in the State Court Litigation. The Debtor has used this breathing room from the State Court Litigation to reorganize its obligations under this Plan. During this Chapter 11 Case, the Debtor has focused on its operations, decreasing expenses, increasing cash flow and restructuring its secured and unsecured debt.

In the State Court Litigation, Alarm Funding's allegations against the Debtor primarily stem from Alarm Funding's improper belief that the Debtor diverted customer payments due to Alarm Funding and caused Alarm Funding's customers to move their service to the Debtor. Alarm Funding's Proof of Claim No. 6 (filed by its successor Alarm Connections, LLC) (the "Alarm Connections Claim") in the amount of $12,318,443 sheds no light on Alarm Connections' alleged damages from the Debtor's conduct.  The Alarm Connections Claim only attaches the State Court Amended Complaint and does not include any details about how such alleged damages were calculated.  As such, the Debtor cannot specifically analyze or respond to Proof of Claim No. 6 in this Plan other than to state that such claim is disputed and subject to estimation.

To the extent that any portion of Alarm Connections Claim is an Allowed Claim, such Allowed Claim shall be a Class 3 General Unsecured Claim under this Plan.

### 2.03.  Assumption of Office Lease

The Debtor intends to file a Motion to Assume the Office Lease to prior to the Confirmation Hearing. The monthly rent is approximately $7,000 per month, there is no security deposit and there will be no cure claim.

### 2.04  Post-Petition Events

**First Day Motions:**  On the Petition Date, the Debtor filed certain "first day" motions seeking certain expedited relief.

One such first day motion was the *Debtor's Motion for Pre-Petition Wages (Debtors Emergency Motion for Entry of Order (I) Authorizing Payment of Pre-Petition Wages, Salaries, Commissions and Employee Benefits; (II) Authorizing Debtor to Continue Maintenance of Employee Practices and Benefit Plans and Programs in the Ordinary Course; and (III) Directing All Banks to Honor Pre-Petition Checks for Payment of Pre-Petition Employee Obligations* ("Wage Motion")[ECF No. 7], wherein the Debtor sought authority to pay the pre-Petition Date wages, commissions, and benefits owed to its employees pursuant to sections 105(a) and 507(a)(4) of the Code. The Court granted the Wage Motion and entered an Order [ECF No. 22] authorizing the Debtor to pay a is $18,840 for the 2-week period ending June 9, 2023 and $13,375 for the 10-day period from June 10, 2023 through June 20, 2023. Additionally, the Court approved the Debtor to pay $11,150 for the 2-week period ending g June 9, 2023 and $7,800 for the 10-day period from June 10, 2023 through June 20, 2023 (payable on July 7, 2023 in the ordinary course of business) for hourly employees and $10,000 for Layoff Employees during the same 10-day period.

On July 10, 2023, the Debtor agreed to the filing of the Subchapter V Trustee's *Agreed Ex-Parte Motion to Require Debtor to Escrow Subchapter V Trustee Fees and Expenses* [ECF No. 31] which was approved by the Court on July 11, 2023 [ECF No.32] requiring the Debtor to deposit $1,000 per month into a DIP account effective the month of July 2023, dedicated for the benefit of the trustee, until such time as the trustee seeks and is awarded compensation.

### 2.05    Relief From Stay by Alarm Funding

On July 13, 2023, Alarm Funding Associates, LLC, a purported creditor in this case, filed an *Expedited Motion for Relief From the Automatic Stay or in the Alternative for Clarification That the Automatic Stay Applies and/or For Imposition of the Automatic Stay Against All Parties* [ECF No. 38] in connection with the state court action commenced by Alarm Funding on November 19, 2019, in the 17th Judicial Circuit in and for Broward County, Florida (the "State Court Action"). On August 3, 2023, the Bankruptcy Court entered an *Order Denying In Part and Continuing In Part Creditor Alarm Funding Associates, LLC's Expedited Motion For Relief From The Automatic Stay Or In The Alternative For Clarification That The Automatic Stay Applies And/Or Imposition Of The Automatic Stay against All Parties*  [ECF No. 44] and scheduled a hearing on the Motion for Clarification on August 9, 2023, to consider the Debtor's request for injunctive relief to prevent duplicative trials on closely related claims against closely related defendants.

In connection with the foregoing, the parties filed the *Agreed Ex-Parte Motion to Extend the Automatic Stay* [ECF No. 49] which the Court approved on August 15, 2023 (the "Agreed Order") [ECF No. 52].  The Agreed Order extended the automatic stay under Section 362(a) of the Bankruptcy Code over Defendants, Benham Security, Inc., Benham Safety, Inc., Benham Safety Inc., Bright Line, Inc., Electronic Security Systems, Inc., Secure Technologies, Inc., United Safety and Alarms, Inc.(the "Debtor")(collectively, the "Corporate Defendants"), Kenneth P. Rush ("Rush"), Vilma Vedda ("Vedda"), Mr. Assal (the Debtor's

13

principal)(collectively, the "Individual Defendants"), as well as the counterclaim and third-party Defendants, Alarm Funding Associates, LLC, Cloud Security Alarms Corp., and All in One Technology, Inc. with respect to the State Court Action.  The parties to the State Court Action, including Alarm Funding, Benham Safety, Inc., Brightline, Inc. Electronic Security Systems, Inc., and Secure Technologies, Inc., and or persons acting in concert or participation with them are stayed, restrained and enjoined from prosecuting or advancing the State Court Action pending further order of this Court.

### 2.06.    Retained Professionals

The Court has authorized the Debtor to retain certain Professionals in connection with the Case. Specifically, the Debtor has retained Paul J. Battista, Esq and the law firm of Venable, LLP. (together, "Venable") as the Debtor's general bankruptcy counsel [*See,* ECF No. 60]. The Debtor may employ other Professionals in the Case.

Following the Petition Date, on June 23, 2023, the U.S. Trustee appointed Soneet Kapila as the Subchapter V Trustee in the Case pursuant to section 1183 of the Bankruptcy Code [ECF No. 15].

### 2.07.    The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The Debtor will review, analyze and resolve Claims on an ongoing basis as part of the claims reconciliation process. As such, the ultimate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Debtor's estimates herein. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

### ARTICLE III

### PROVISIONS RELATING TO THE SUBCHAPTER V TRUSTEE

### 3.01.    Distributions Under Plan and Retention of Subchapter V Trustee

Pursuant to section 1194 of the Bankruptcy Code, and regardless of whether the Plan is confirmed consensually under section 1191(a) of the Bankruptcy Code or non-consensually under section 1191(b) of the Code, the Reorganized Debtor, and not the Subchapter V Trustee, shall make all Distributions under the Plan. For more information regarding the method of Distributions under the Plan, see Section 7.02 of the Plan. The Subchapter V Trustee shall

remain in place following the Effective Date and, upon the request of the Subchapter V Trustee, the Reorganized Debtor shall provide financial statements to the Subchapter V Trustee.

## ARTICLE IV

## TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

The following Administrative Claims and Priority Tax Claims are Unimpaired under the Plan and will be treated as follows:

### 4.01. Allowed Administrative Claims

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the Debtor and the holder of such Allowed Administrative Claim. All other holders of Allowed Administrative Claims (*with the exception of the Debtor's Professionals, the Subchapter V Trustee, and those Administrative Claims otherwise specifically classified and treated in the Plan*) shall be paid 100% of their respective Allowed Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

Venable, any other Professional retained by the Debtor in the Case, and the Subchapter V Trustee shall file a final Fee Request with the Court for an award of compensation of fees and reimbursement of expenses pursuant to sections 330 and 503 of the Bankruptcy Code by the deadline to be established by the Court. Such final Fee Requests will be considered by the Court at the Confirmation Hearing. The Allowed Amounts of the Administrative Claims awarded to Venable, the Subchapter V Trustee, and any other Professional shall be payable by the Effective Date of the Plan or upon such other dates and terms as may be agreed upon by the Debtor and the holder of such Allowed Administrative Claim. Nothing herein shall preclude any Professional from filing an interim Fee Request in the Case pursuant to section 331 of the Bankruptcy Code or additional fee requests following the Effective Date.

### 4.02. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Bankruptcy Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in full by the Debtor, as applicable, on the Effective Date. While the Florida Department of Revenue filed a Priority Tax Claim in the amount of $5,636.70, the Debtor submits that all pre-petition sales taxes have been paid in full.  Further, the Internal Revenue Service filed an estimated Priority Tax Claim of $500.00 related to 2022 income taxes.  The Debtor timely filed its 2022 tax return with no amount due and owing. As a result, the Debtor estimates that there are no Priority Tax Claims.

### 4.03.    Insider and Post-Petition Date Financing

On May 1, 2020, Active Universal Capital, LLC (entity owned by Insider Sherine Assal) ("AUC") entered into a Business Loan Agreement ("AUC Loan Documents") with the Debtor that provides the Debtor with access to a $1,500,000 letter of credit fully secured (via a valid UCC) by substantially all of the Debtor's assets (the "AUC Loan"). The maturity date of the AUC Loan is May 1, 2024. As of the Petition Date, the principal balance of the AUC Loan was $563,916.95 in principal and $55,000 in accrued interest. Prior to the Petition Date and during this Chapter 11 Case, the Debtor has made interest only payments to AUC on account of the AUC Loan in the monthly amount of $5,600.

Throughout this Chapter 11 Case, AUC has consented to the use of its cash collateral without a Court Order at its own request. The Debtor shall subordinate any Administrative Claim arising from the post-petition use of AUC's cash collateral to all other Allowed Claims in the Estate. The Debtor will continue to pay interest only on the AUC Loan until the Effective Date.

Upon the Effective Date, the Petition Date balance of the AUC Loan shall convert to a $618,916.95 term loan wherein (a) the interest rate shall continue to be six (6%) percent; and (b) the maturity date of the AUC will extend to thirty-six (36) months after the Effective Date (the "Plan Period"). The Debtor shall make interest only payments on the Term Loan during the Plan Period with a balloon payment due thirty-seven (37) months from the Effective Date. In addition, on the Effective Date, the Debtor and AUC shall enter into a renewed letter of credit in an amount to be negotiated prior to the Confirmation Hearing. With the exception of Administrative Claims required to be paid on the Effective Date, the renewed letter of credit shall be used solely for operation of the Debtor's business and not for Distributions hereunder.

### ARTICLE V

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtor shall be as follows:

**"*Class 1*"** shall mean the Allowed Secured Claim of Active Universal Capital, LLC, as described, classified, and treated in Section 6.01 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code, accordingly, the holder of the Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

**"*Class 2*"** shall mean the Allowed Secured Tax Claim of Broward County, as described, classified, and treated in Section 6.02 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 2 Claim is entitled to vote to accept or reject the Plan. The Debtor estimates that the Class 2 Secured Tax Claim of Broward County will total no more than $20,000 for personal property taxes for tax years 2020 through 2023. Future personal property taxes shall be paid in the ordinary course of business by the Reorganized Debtor.

*"Class 3"* shall mean the Allowed General Unsecured Claims, as described, classified, and treated in Section 6.03 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holders of the Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

*"Class 4"* shall mean the Allowed Subordinated Individual Insider Claims, as described, classified and treated in Section 6.04 of this Plan. This Class is Impaired and deemed to reject the Plan as it will not receive any payments under this Plan and, therefore, are not entitled to vote to accept or reject the Plan.

*"Class 5"* shall mean the Allowed Equity Interests, as described, classified, and treated in Section 6.05 of this Plan. This Class is Unimpaired within the meaning of section 1124 of the Code. Accordingly, the holders of the Allowed Class 5 Equity Interests are deemed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

## ARTICLE VI

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 6.01.   Class 1. Allowed Secured Claim of Active Universal Capital

(a)      Description. Class 1 consists of the Allowed Secured Claim of Active Universal Capital, LLC in the amount of $618,916.95 under that certain Business Loan Agreement dated May 1, 2020, which is secured by a perfected lien on substantially all assets of the Debtor.

(b)      Treatment. In full satisfaction, settlement and release of its Allowed Secured Claim, the AUC Loan shall convert to a $618,916.95 term loan wherein (a) the interest rate shall continue to be six (6) percent; and (b) the May 1, 2024 maturity date of the AUC Loan will extend to thirty-six (36) months after the Effective Date.  The Debtor shall make interest only payments on the Term Loan in the amount of $5,600 during the Plan Period with a balloon payment due thirty-seven (37) months from the Effective Date.

(c)      Impairment. The Allowed Secured Claim of Active Universal Capital, LLC is Impaired. Accordingly, the holder of an Allowed Secured Claim of Active Universal Capital is entitled to vote to accept or reject the Plan.

### 6.02.   Class 2.  Allowed Secured Claim of Broward County

(a)      Description. Class 2 consists of the Allowed Secured Claim of Broward County as evidenced by Proof of Claim No. 3-1 in the amount of $2,062.94, for 2019 and 2020 Tangible Property Tax, which is secured pursuant to Section 197.122, Florida Statutes on substantially all assets of the Debtor.

(b)      Treatment. In full satisfaction, settlement and release of its Allowed Secured Claim, Broward County shall receive beginning on the Effective Date, the amount of its Allowed

Secured Claim in full payable in thirty-six (36) equal monthly payments.

(c)      Impairment. The Allowed Secured Claim of Broward County is Impaired. Accordingly, the holder of an Allowed Secured Claim of Broward County is entitled to vote to accept or reject the Plan.

**6.03.    Class 3. Allowed General Unsecured Claims**

(a)      Description. Class 3 consists of the Allowed General Unsecured Claims. Without prejudice, the Debtor estimates that Class 3 may consist of Allowed General Unsecured Claims in the approximate total amount of $277,186.56. This amount excludes a claim in the amount of $12,318,443.00 filed by Alarm Connections, Inc. which amount is disputed by the Debtor and is subject to estimation.  To avoid any doubt, Class 3 excludes any Unsecured Claims held by individual Insiders which are classified under Class 4.

(b)      Treatment. Except to the extent that a holder of an Allowed Class 3 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, each holder of an Allowed Class 3 Claim shall receive a *Pro Rata* Distribution from projected disposable income (total income not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor) ("Projected Disposable Income") over three (3) years first payable on January 1, 2024 and each quarter thereafter through and including December 31, 2026.  The Debtor's Projected Disposable Income is set forth in Exhibit B.

(c)      Impairment. The Allowed Class 3 Claims are Impaired. Accordingly, each holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**6.04    Class 4. Allowed Subordinated Individual Insider Claims**

(a)      Description. Class 4 consists of the Allowed Subordinated Insider Claims. Without prejudice, the Debtor estimates that Class 4 may consist of the Allowed Subordinated Claims of Individual Insiders in the approximate total amount of $3,614,171.71.  These Individual Insider Claims consist of (i) Sherif Assal in the amount of $1,707,212.49; and (ii) Sherine Assal in the amount of $1,906,959.22 (collectively, the "Individual Insider Claims").

(b)      Treatment. Except to the extent that a holder of an Allowed Class 4 Claim agrees to a less favorable classification or treatment, each holder of an Allowed Class 4 shall receive no distribution under this Plan on account of such Claim.

(c)      Impairment. The Allowed Class 4 Claims are Impaired and will receive no Distribution under the Plan. Accordingly, each holder of an Allowed Class 4 Claim is deemed to reject the Plan.

**6.05    Class 5. Allowed Equity Interests**

(a)    <u>Description</u>. Class 5 consists of Allowed Equity Interests in the Debtor owned by Sherif Assal.

(b)    <u>Treatment</u>. Upon the Effective Date, the Holders of Equity Interests in the Debtor shall be entitled to retain all legal, equitable and contractual rights in such Equity Interests provided, however, Holders shall not be entitled to any Distribution from the Estate until the satisfaction of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Claims in Classes 1 through 4.

(c )    <u>Impairment</u>. Class 5 Equity Interests are Unimpaired and, therefore, are not entitled to vote to accept or reject the Plan.  Class 5 is assumed to accept the Plan.

## ARTICLE VII

## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS

### 7.01.   Solicitation of Votes

Classes 1, 2, 3 and 4 are Impaired under the Plan. Accordingly, pursuant to sections 1126, 1129(a) and 1191(a) of the Bankruptcy Code, each holder of an Allowed Claim or Allowed Equity Interest in Classes 1, 2 and 3 is entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Court.  Class 5 is Unimpaired and therefore deemed to accept the Plan.  Class 4 is not receiving a distribution under the Plan and is therefore deemed to reject the Plan. ***However, any holder of a Claim valued at an unknown amount and any holder of a Disputed Claim or Interest is not entitled to vote on the Plan unless estimated and allowed for voting purposes by the Court.***

An Impaired Class of Claims or Interests will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims and Interests actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims and Interests actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Code or any Insider. A vote may be disregarded if the Court determines, After Notice and a Hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

Notwithstanding the foregoing, acceptance by an Impaired Class of Claims or Interests is ***not*** required to confirm the Plan. Pursuant to section 1191(b) of the Code, if all applicable requirements of section 1129(a) of the Code, other than paragraphs (8), (10), and (15) of that section, are met, the Court, on request by the Debtor, ***shall*** confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Impaired Class of Claims or Interests that has not accepted the Plan.

### 7.02.   Method of Distribution Under the Plan

(a)    Subject to Rule 3021, and notwithstanding section 1194(b) of the Bankruptcy Code, all Distributions under the Plan shall be made by the Reorganized Debtor (and not the Subchapter V Trustee) to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or proof of claim as of the Distribution Record Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual Distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for such rounding.

(e)    In the event that any Distribution to any holder is returnable as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such Distribution(s) shall be extinguished and forever barred.

(f)    Unless otherwise provided herein, all initial Distributions and deliveries to be made on the Effective Date shall be made on the Effective Date. Subsequent Distributions shall be made in accordance with the terms set forth in the Plan and/or the Confirmation Order.

(g)    At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim after the Distribution Record Date and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date.

### 7.03.    <u>Procedures for Allowance or Disallowance of Disputed Claims</u>

(a)    **Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

All objection(s) to any Claim(s) must be filed within fourteen (14) days prior to the Confirmation Hearing, or as otherwise ordered by the Court (the "Objection Deadline"), or with respect to rejection claims, within fourteen (14) days following the Rejection Claim Bar Date (the "Objection to Rejection Claims Deadline"). The Debtor's failure to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

Subject to applicable law, from and after the Effective Date, the Reorganized Debtor will have the authority to file, settle, compromise, withdraw, arbitrate, or litigate to judgment any and all objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Rules and the Plan. If the Debtor settles any such objections to Claims, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim.  If the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, the Debtor shall set the contested matter for hearing before the Court and will provide all interested parties with notice of the hearing to consider the claim objection.

Except as to Fee Requests for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of its objections without approval of the Court. Unless otherwise ordered by the Court, the Debtor or the Reorganized Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court. The Debtor or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

### (b)    No Distribution Pending Allowance and Establishment and Maintenance of Disputed Claims Reserve

Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

Rather, on the first Distribution Date pursuant to the terms of the Plan and each subsequent Distribution Date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Disputed Claims, an amount equal to One Hundred Percent (100%) of the Distribution to which holders of Disputed Claims would be entitled to under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim

Amounts, or as estimated by the Debtor or the Court in accordance with Section 7.06 of the Plan (the "Disputed Claims Reserve").

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive Distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent Distribution Date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

**(c)    Disallowed Claims**

All Claims held by Persons against whom the Debtor or the Disbursing Agent has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this Section of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

**7.04.    Disbursing Agent**

Except as otherwise provided in the Confirmation Order, the Reorganized Debtor will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all Distributions required to be distributed under the applicable provisions of the Plan. Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan. Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor. The Disbursing Agent shall maintain a separate account for the Disputed Claims Reserve, if necessary.

**7.05.    Setoffs and Recoupment**

The Debtor may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

**7.06.    Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, the Debtor, or the

Reorganized Debtor, as applicable, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtor, Reorganized Debtor, and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 7.07.  <u>No Recourse</u>

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, or any of their respective Professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code.

*THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.*

### 7.08.  <u>Amendments to Claims</u>

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor, or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**7.09.** **No Post-Petition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**7.10.** **Unclaimed Funds**

If any Distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after the Distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such Distribution was made shall be canceled and said claimant shall not be entitled to any further Distributions hereunder. A Distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable. Any funds unclaimed shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Reorganized Debtor pursuant to section 347(b) of the Code.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01.** **Assumption or Rejection of Executory Contracts and Unexpired Leases**

**(a)** **Executory Contracts and Unexpired Leases**

The Bankruptcy Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Bankruptcy Code.

Pursuant to sections 365(a) and (b) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed *rejected* by the Reorganized Debtor as of the Effective Date of the Plan, *except* for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date.

**(b)** **[Reserved]**

**(c)** **Insurance Policies**

Notwithstanding the provisions of Section 8.01(a) of the Plan, the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan and are hereby _assumed_ pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code. Notwithstanding the foregoing, Distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any Entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

**(d)** **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed under the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

**8.02.** **Cure of Defaults**

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed or provided for herein and/or in the Plan Supplement or in a motion requesting Court approval of assumption. To the extent that the non-debtor counterparty to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement or in the motion requesting Court approval of assumption, such party must file a notice of dispute with the Court and serve such notice on the Debtor by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

**8.03.** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Any party to an executory contract or unexpired lease rejected pursuant to the Plan with a claim for rejection damages under section 502(g) of the y Code ("**_Rejection Claim_**") may file

with the Court a claim within twenty-one (21) days from the date of service of the Confirmation Order and, if filed, shall serve a copy on the Debtor and its general bankruptcy counsel (the "***Rejection Claim Bar Date***"). The Debtor shall have fourteen (14) days from the filing of a Rejection Claim to file an objection to such Rejection Claim. Unless otherwise ordered by the Court, all Rejection Claims against the Debtor shall be treated in Class 3 under the Plan.

**ANY CREDITOR WHO FAILS TO FILE A REJECTION CLAIM ON OR BEFORE THE REJECTION CLAIM BAR DATE WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH REJECTION CLAIM AGAINST THE DEBTOR AND ITS ESTATE, AND THE DEBTOR AND ITS ESTATE, THE REORGANIZED DEBTOR OR ANY SUCCESSOR, AND PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH REJECTION CLAIM. IN ADDITION, THE HOLDER OF SUCH REJECTION CLAIM SHALL NOT BE PERMITTED TO PARTICIPATE IN ANY DISTRIBUTION IN THE CASE ON ACCOUNT OF SUCH REJECTION CLAIM OR RECEIVE FURTHER NOTICES REGARDING SUCH REJECTION CLAIM.**

### 8.04. <u>Indemnification Obligations</u>

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive Confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

### 8.05. <u>Compensation and Benefit Programs</u>

Except as provided in the Plan, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby ***assumed*** pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

### ARTICLE IX

### MEANS FOR IMPLEMENTATION
### <u>AND EFFECT OF CONFIRMATION OF PLAN</u>

### 9.01.  General

Upon Confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following provisions of Article IX of the Plan shall constitute the means for implementation of the Plan.

### 9.02.  Continued Corporate Existence

United Safety and Alarms, Inc., as the Reorganized Debtor, shall continue to exist after the Effective Date with all powers of a corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable law; and, following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

### 9.03.  [Intentionally Left Blank]

### 9.04.  The Reorganized Debtor

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all property of the Estate free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and Holders of Equity Interests. The Reorganized Debtor shall assume all of the Debtor's respective rights, obligations and liabilities under the Plan and the Confirmation Order.

### 9.05.  Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents or agreements identified in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 9.06.  Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtor or Reorganized Debtor or its successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the new common stock and documents relating thereto, the adoption of the Reorganized Debtor's Certificate of Incorporation, the Reorganized Debtor's Bylaws, and

the election or appointment, as the case may be, of directors and officers of the Reorganized Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the applicable General Corporation Law, without any requirement of further action by the stockholders or directors of the Debtor or Reorganized Debtor. On the Effective Date or as soon thereafter as is practicable, the Debtor shall, if required, file its amended certificate of incorporation with the secretary of state of the state in which the Reorganized Debtor is incorporated, in accordance with the applicable general corporation law of such state.

### 9.07. __Approval of Agreements__

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

### 9.08. __No Change of Control__

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 9.09. __Administration After the Effective Date__

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Bankruptcy Code and Rules. Mr. Assal will remain as President and will not receive a salary from the Reorganized Debtor.

### 9.10. __Term of Bankruptcy Injunction or Stays__

All injunctions or stays provided for in the Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except as otherwise provided in the Plan.

### 9.11. __Re-vesting of Assets__

Except as otherwise provided in the Plan, pursuant to section 1141 of the Bankruptcy Code, the property of the Estate of the Debtor, including without limitation any Actions, shall re-vest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

### 9.12. __Causes of Action__

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any and all Actions accruing to the Debtor, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, shall become assets of

the Reorganized Debtor, and, subject to an order of the Bankruptcy Court providing otherwise, the Reorganized Debtor shall have the authority to commence and prosecute such Actions for the benefit of the Estate.

### 9.13.  Discharge of Debtor

**(a)      Consensual Plan Confirmed Under Section 1191(a) of the Code**

*Except as otherwise provided in the Plan and/or in the Confirmation Order, if the Plan is confirmed under section 1191(a) of the Bankruptcy Code, then upon the Effective Date of the Plan, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, or any of the assets or properties under the Plan to the extent provided and described in section 1141(d) of the Bankruptcy Code and without further order of the Court. Except as otherwise provided in the Plan and/or in the Confirmation Order, (i) on the Effective Date, all such Claims against the Debtor, and Equity Interests in the Debtor, shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.*

**(b)      Non-Consensual Plan Confirmed Under Section 1191(b) of the Code**

*Except as otherwise provided in the Plan and/or in the Confirmation Order, and pursuant to section 1192 of the Bankruptcy Code, if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, then upon the completion by the Debtor of all payments due within the three (3) year Plan Period, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of the Bankruptcy Code and provided for in the Plan. Except as otherwise provided in the Plan and/or in the Confirmation Order, (i) upon the completion of the Plan, all such Claims against the Debtor, and Equity Interests in the Debtor, shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.*

### 9.14.  Injunction Related to Confirmation

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the*

*Debtor, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and its properties and interests in property. Nothing in the above-referenced injunction will operate to enjoin actions that are permitted by the Castellano Settlement.*

### 9.15.   Release by Holders of Impaired Claims.

*Except as otherwise provided herein, this Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that the holders of Claims against the Debtor and Equity Interests in the Debtor may have against the Debtor, the Debtor's Estate and the Reorganized Debtor pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. Except as provided in the Plan, in consideration of the obligations of the Debtor and the Reorganized Debtor under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, the Debtor and each holder of a Claim against or Equity Interest in the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Debtor, the Debtor's Estate and the Reorganized Debtor, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Case, or the conduct thereof, or this Plan.*

### 9.16.   Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such Entity may take in connection with the pursuit of appellate rights.*

### 9.17.   Votes Solicited in Good Faith

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited

acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### 9.18.   Preference Payments Under Section 547 of the Code

Section 547 of the Bankruptcy Code enables a debtor in possession to avoid transfers the debtor made while it was insolvent, to a creditor, based upon an antecedent debt, within ninety (90) days of the petition date, or within one (1) year of the petition date if such creditor at the time of such transfer was an insider of the debtor, which enabled the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value.

Prior to the Confirmation Date, the Reorganized Debtor shall analyze payments made by the Debtor to creditors within ninety (90) days (or in the case of insiders, one year) before the Petition Date to determine on a final basis which payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions. Any action under section 547 of the Bankruptcy Code that has not been initiated prior to the Confirmation Date shall be deemed abandoned, unless otherwise expressly authorized by an order of the Court.

### ARTICLE X

### FUNDING AND FEASIBILITY OF THE PLAN

### 10.01.   Risks to Creditors

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors. However, nothing contained herein shall be construed to be advice on the tax, securities, or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

### 10.02.   Sources of Consideration for Plan Distributions

The sources of consideration for Distributions under the Plan include: (i) the renewed letter of credit between the Reorganized Debtor and AUC (with respect to Administrative Claims only); (ii) the Debtor's cash on hand as of the Effective Date; (iii) the Debtor's accounts receivable as of the Effective Date; and (iv) Projected Disposable Income of the Reorganized Debtor.

### 10.03.   Best Interests Test and Liquidation Analysis

With respect to each Impaired Class of Claims, pursuant to section 1129(a)(7) of the

Bankruptcy Code, Confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

To determine what holders of Allowed Claims of each Impaired Class would receive if the Debtor was liquidated under chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in the context of a chapter 7 liquidation case by a chapter 7 trustee in bankruptcy. The cash amount that would be available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of the Debtor's unencumbered assets, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the chapter 7 case. The Debtor's cost of liquidation under chapter 7 would include the fees payable to the chapter 7 trustee, as well as those fees that might be payable to other professionals that such trustee might engage. The foregoing types of claims and other claims, including administrative claims, that might arise in a chapter 7 case or result from the pending Chapter 11 Case, including any unpaid fees and expenses incurred by the Debtor during the chapter 11 Case such as compensation or reimbursement for attorneys and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay Pre-Petition Allowed Claims.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for Distribution to Creditors in the Case, including (i) the increased costs and expenses of a liquidation under chapter 7, (ii) the increased amount of Allowed Claims in a liquidation under chapter 7, (iii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment that would prevail, (iv) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Case; and (v) unavailability of the Debtor's Projected Disposable Income, the Debtor has determined that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

A liquidation analysis prepared by the Debtor is attached hereto as **<u>Exhibit A</u>** (the "*Liquidation Analysis*"). The information set forth in the Liquidation Analysis provides a summary of the liquidation values of the Debtor's assets, as of the Petition Date, assuming a chapter 7 liquidation in which a chapter 7 trustee appointed by the Court would liquidate the Debtor's unencumbered, nonexempt assets. Reference should be made to the Liquidation Analysis for a complete discussion. The Liquidation Analysis was be prepared by the Debtor with the assistance of counsel. Underlying the Liquidation Analysis is a number of estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtor is, in fact, to undergo such a liquidation. The Debtor will use its best estimation to provide the information set forth in the Liquidation Analysis.

When the Plan is compared to the Liquidation Analysis, the Debtor believes that there is slight risk to creditors and that Confirmation of the Plan is in the best interests of the Debtor's Estate. Under Class 3 of the Plan, the Debtor proposes to distribute on a pro rata basis an amount greater than the liquidation value of the Debtor's assets. In other words, the Debtor's proposed treatment under Class 3 is greater than what creditors may obtain in a chapter 7 liquidation. Accordingly, the Debtor submits that holders of Allowed Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

### 10.04.  **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.

For purposes of determining whether the Plan meets this requirement, the Plan Proponent has analyzed the Debtor's ability to meet its financial obligations as contemplated hereunder and prepared the financial projection analysis attached hereto as **Exhibit B** (the "***Projection Analysis***"). As evidenced by the Projection Analysis, the Debtor will be able to provide the payments contemplated under the Plan.

Based on the foregoing, the Plan Proponent believes that the Debtor will be able to provide for all payments required under to the Plan. Accordingly, the Plan Proponent asserts that the Debtor is able to perform all of its obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### 10.05.  **Present Financial Condition**

The Debtor's most recent monthly operating report to be attached hereto as **Exhibit C** under separate cover once completed, indicates that the Debtor will have (i) sufficient cash on hand by the Confirmation Hearing and (ii) Cash available under the Debtor's renewed letter of credit with AUC to make all necessary payments in Cash due on or before the Effective Date of the Plan, if any.

## ARTICLE XI

## EFFECTIVENESS OF THE PLAN

### 11.01.  **Conditions to the Effective Date**

The Plan shall not become effective until the date (the "***Effective Date***") that is fifteen days (15) following the latter of the following events occurring:

(a)     The Confirmation Order shall have been entered by the Bankruptcy Court and

shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date.

## ARTICLE XII

## <u>RETENTION OF JURISDICTION</u>

Except as provided in the Plan, the Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)    to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)    to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)    to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)      to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein; to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(m)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(n)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such Entity);

(o)      to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(p)      to hear any other matter not inconsistent with the Code; and

(q)      to enter a final decree closing the Case.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.01   Effectuating Documents and Further Transactions

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file and/or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 13.02   Exemption from Transfer Taxes

Pursuant to section 1146 of the Code, the issuance, transfer, or exchange of a security or asset under the Plan, or the making or delivery of an instrument of transfer under the Plan, shall not be taxed under any law imposing a stamp tax or similar tax. As such, the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.03.   Authorization to Request Prompt Tax Determinations

The Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 13.04   Exculpation

*Subject to the occurrence of the Effective Date, neither the Debtor nor the Reorganized Debtor, or any of its members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person as provided in the Plan, or otherwise, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.*

### 13.05   Injunction Relating to Exculpation

*The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtor, the Reorganized Debtor and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.*

### 13.06   Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 13.07   Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 13.08   Amendment or Modification of Plan

Modifications, alterations, or amendments of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Hearing in conformity with section 1193(a) of the Code, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122, and 1123 of the Code, with the exception of subsection 1123(a)(8). After the modification is filed with the Court, the Plan as modified becomes the Plan.

Pursuant to section 1193(b) of the Code, if the Plan has been confirmed under section 1191(a) of the Code, the Debtor may modify the Plan at any time after Confirmation of the Plan and before Substantial Consummation of the Plan in conformity with section 1193(b) of the Code, but may not modify the Plan so that the Plan as modified fails to meet the requirements of sections 1122 and 1123 of the Code, with the exception of subsection 1123(a)(8). The Plan, as modified under subsection 1193(b) of the Code, becomes the Plan only if circumstances warrant the modification and the Court, After Notice and a Hearing, confirms the Plan as modified under section 1191(a) of the Code. Pursuant to section 1193(d) of the Code, if the Plan has been confirmed under section 1191(a) of the Code, any holder of a Claim or Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such holder changes the previous acceptance or rejection of the holder.

Pursuant to section 1193(c) of the Code, if the Plan has been confirmed under section 1191(b) of the Code, the Debtor may modify the Plan at any time within three (3) years, or such longer time not to exceed five (5) years, as fixed by the Court, but may not modify the Plan so that the Plan as modified fails to meet the requirements of section 1191(b) of the Code. The Plan, as modified under subsection 1193(c), becomes the Plan only if circumstances warrant the modification and the Court, After Notice and a Hearing, confirms the Plan as modified under section 1191(b) of the Code.

Prior to the Effective Date of the Plan, the Debtor, without the approval of the Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission, or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 13.09   Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to

be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.10    Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, or an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**13.11    Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**13.12    Notices**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Notices shall be sent or delivered to the following:

**To United Safety and Alarms, Inc., Reorganized Debtor:**

Sherif Assal, President
5555 N. Nob Hill Road
Sunrise, FL 33351

**With a copy to:**

Heather L. Harmon, Esq.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: hlharmon@venable.com

**13.13    Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 13.14    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 13.15    Section 1125(e) of the Code

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtor and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 13.16    Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 13.17    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 13.18    Waiver of Bankruptcy Rule 3020(e) and 7062

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

### 13.19    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set

forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 13.20    Substantial Consummation

Substantial Consummation of the Plan shall be deemed to occur under sections 1101 and 1193 of the Code upon satisfaction of all payments due under this Plan on or before the Effective Date.

### 13.21    Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 13.22    Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.23    No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty, or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 13.24    Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, including without limitation the Reorganized Debtor, and its successors and assigns.

### 13.25    Headings

The headings of Articles, Sections and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 13.26    No Penalty for Prepayment

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

### 13.27    Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 13.28    Remedy of Defects

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

### 13.29    Post-Confirmation Date Service List

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order shall be required to be sent to such entities.

## ARTICLE XIV

## CONCLUSION

The aforesaid provisions shall constitute the First Amended Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**[SIGNATURES ON NEXT PAGE]**

**Dated: January 19, 2024**

Respectfully submitted,

**UNITED SAFETY AND ALARMS, INC.**

/s/  Sherif Assal
Sherif Assal
President and Sole Shareholder

/s/ Heather L. Harmon
**VENABLE, LLP**
Paul J. Battista, Esq.
Florida Bar No. 884162
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 813818
Heather L. Harmon, Esq.
Florida Bar No. 013192
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for the Debtor*

**EXHIBIT A**
**(Liquidation Analysis)**

| LIQUIDATION ANALYSIS | | | | | | |
|---|---|---|---|---|---|---|
| UNITED SAFETY AND ALARMS, INC. | | | | | | |
| | | | | | | |
| | | Chapter 11 Reorganization | Percentage Recovery Chapter 11 | Chapter 7 Liquidation | Percentage Recovery Chapter 7 | |
| **ASSETS** | | | | | | |
| | | | | | | |
| | ESTIMATED CASH ON HAND | $ 75,449.79 | | $ 75,449.79 | | Note 1 |
| | ACCOUNTS RECEIVABLE (UNDER 90 DAYS) | $ 117,929.06 | | $ 39,309.69 | | Note 2 |
| | ACCOUNTS RECEIVABLE (OVER 90 DAYS) | $ 240.05 | | $ 240.05 | | Note 2 |
| | OPERATING EQUIPMENT | $ 84,817.84 | | $ 11,309.05 | | Note 3 |
| | RECOVERY FROM LITIGATION CLAIMS | Unknown | | Unknown | | Note 4 |
| | RECOVERY FROM AVOIDANCE ACTIONS | Unknown | | Unknown | | Note 4 |
| | | | | | | |
| | TOTAL PROCEEDS | $ 278,436.73 | | $ 126,308.57 | | |
| | | | | | | |
| **CLASSES OF SECURED CREDITORS** | | | | | | |
| | | | | | | |
| | SECURED CLAIM OF ACTIVE UNIVERSAL CAPITAL | $ 618,916.95 | 100% | $ 618,916.95 | 20% | Note 5 |
| | SECURED CLAIM OF BROWARD COUNTY | $ 20,000.00 | 100% | $ 20,000.00 | 0% | Note 6 |
| | | | | | | |
| | | | | | | |
| **ADMINISTRATIVE EXPENSES** | | | | | | |
| | | | | | | |
| | PRE-CONFIRMATION PROFESSIONAL FEES (est.) | $ 75,000.00 | 100% | $ 75,000.00 | 0% | Note 7 |
| | SUBCHAPTER V TRUSTEE | $ 25,000.00 | 100% | $ 7,000.00 | 28% | Note 7 |
| | CHAPTER 7 TRUSTEE STATUTORY FEES (est./aggregate) | $ - | N/A | $ 5,700.00 | 0% | Note 7 |
| | ADDITIONAL PROFESSIONAL FEES IN CHAPTER 7 (est./aggregate) | $ - | N/A | $ 30,000.00 | 0% | Note 7 |
| | UNITED STATES TRUSTEE'S FEES (1Q 2024) (est.) | $ 4,000.00 | 100% | $ 4,000.00 | 0% | Note 7 |
| | | | | | | |
| | TOTAL ADMINISTRATIVE CLAIMS | $ 104,000.00 | | $ 121,700.00 | | |
| | | | | | | |
| | | | | | | |
| **PRIORITY TAX CLAIMS** | | | | | | |
| | | | | | | |
| | PRIORITY TAX CLAIMS | $ - | 100% | $ - | 0% | Note 8 |
| | | | | | | |
| | | | | | | |
| **GENERAL UNSECURED CREDITORS** | | | | | | |
| | | | | | | |
| | ESTIMATED ALLOWED GENERAL UNSECURED CLAIMS (ESTIMATING ALARM CONNECTIONS at $750,000) | $ 1,000,000.00 | | $ 1,000,000.00 | | Note 9 |
| | ESTIMATED ALLOWED GENERAL UNSECURED CLAIMS (ESTIMATING ALARM CONNECTIONS at $6,000,000) | $ 6,200,000.00 | | $ 6,200,000.00 | | Note 9 |

| LIQUIDATION ANALYSIS | | | | | | |
|---|---|---|---|---|---|---|
| UNITED SAFETY AND ALARMS, INC. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | Chapter 11 Reorganization | Percentage Recovery Chapter 11 | Chapter 7 Liquidation | Percentage Recovery Chapter 7 | |
| | ESTIMATED AMOUNT AVAILABLE FOR GENERAL UNSECURED CREDITORS OVER 36 MONTHS (ESTIMATING ALARM CONNECTIONS AT $750,000) | $ 111,000.00 | 11.10% | $ - | 0% | Note 10 |
| | ESTIMATED AMOUNT AVAILABLE FOR GENERAL UNSECURED CREDITORS OVER 36 MONTHS (ESTIMATING ALARM CONNECTIONS AT $6,000,000) | $ 111,000.00 | 1.79% | $ - | 0% | Note 10 |

**EXHIBIT B**
**(Projections of Disposable Income)**

| United Safety and Alarms, LLC YEAR 1 - 2024 | Month 1 | Month 2 | Month 3 | month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL PROJ YEAR 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 160,000 | 1,920,000 |
| COGS | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 23,068 | 276,812 |
| Gross Profit | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 136,932 | 1,643,188 |
| **Expenses** | | | | | | | | | | | | | |
| Accounting/legal | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Auto expense | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| MISC | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Bank Charges | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Outside services | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Insurance- Auto | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 65,400 |
| Insurance- GL EX | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 50,400 |
| Interest Payment | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 67,200 |
| Headquarters Rent | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Payroll expenses | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 64,734 | 776,805 |
| Medical Insurance | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 29,993 |
| Rent-machine/equipment | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Taxes and licenses | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Travel/meals | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Office expense | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 12,249 |
| Phones | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 10,332 |
| Repairs and Maintenance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Utilities/internet/telephone | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 51,600 |
| TOTAL EXPENSES | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 133,915 | 1,606,979 |
| NET INCOME | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 3,017 | 36,208 |
| DISPOSABLE INCOME 50% NET INCOME | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 1,508.68 | 18,104.11 |

| United Safety and Alarms, LLC YEAR 2 - 2025 | Month 1 | Month 2 | Month 3 | month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | PROJ YEAR 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 2,100,000 |
| | | | | | | | | | | | | | |
| COGS | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 28,068 | 336,816 |
| | | | | | | | | | | | | | |
| Gross Profit | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 146,932 | 1,763,184 |
| | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | |
| Accounting/legal | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Auto expense | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| MISC | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Bank Charges | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Outside services | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Insurance- Auto | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 65,400 |
| Insurance- GL EX | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 50,400 |
| Interest Payment | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 67,200 |
| Headquarters Rent | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Payroll expenses | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 71,207 | 854,486 |
| Medical Insurance | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 29,993 |
| Rent-machine/equipment | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 87,000 |
| Taxes and licenses | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Travel/meals | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Office expense | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 12,249 |
| Phones | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 10,332 |
| Repairs and Maintenance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Utilities/internet/telephone | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 51,600 |
| | | | | | | | | | | | | | |
| TOTAL EXPENSES | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 140,638 | 1,687,660 |
| | | | | | | | | | | | | | |
| NET INCOME | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 6,294 | 75,524 |

| United Safety and Alarms, LLC YEAR 3 - 2026 | Month 1 | Month 2 | Month 3 | month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | PROJ YEAR 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 2,280,000 |
| | | | | | | | | | | | | | |
| COGS | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 33,068 | 396,816 |
| | | | | | | | | | | | | | |
| Gross Profit | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 156,932 | 1,883,184 |
| | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | |
| Accounting/legal | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Auto expense | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| MISC | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Bank Charges | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Outside services | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Insurance- Auto | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 5,450 | 65,400 |
| Insurance- GL EX | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 50,400 |
| Interest Payment | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 67,200 |
| Headquarters Rent | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Payroll expenses | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 78,328 | 939,932 |
| Medical Insurance | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 2,499 | 29,993 |
| Rent-machine/equipment | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 7,250 | 87,000 |
| Taxes and licenses | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Travel/meals | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Office expense | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 1,021 | 12,249 |
| Phones | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 861 | 10,332 |
| Repairs and Maintenance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Utilities/internet/telephone | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 51,600 |
| | | | | | | | | | | | | | |
| TOTAL EXPENSES | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 147,759 | 1,773,106 |
| | | | | | | | | | | | | | |
| NET INCOME | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 9,173 | 110,078 |

**EXHIBIT C**
**(December Monthly Operating Report – to be filed under separate cover upon completion)**